# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| THONGKHOUNE INTHOULANGSY, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | **Criminal Action No.** **05-40037-FDS** |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Respondent. | ) ) ) | |

## MEMORANDUM AND ORDER ON PETITIONER'S MOTION TO VACATE OR FOR AN EVIDENTIARY HEARING

**SAYLOR, J.**

Thongkhoune Inthoulangsy pleaded guilty in 2006 to various controlled-substance offenses. He has filed a petition and motion pursuant to 28 U.S.C. § 2255 to vacate his guilty plea, or in the alternative, for an evidentiary hearing. He contends that his guilty plea was not made voluntarily or with a full understanding of the consequences; that his trial counsel was ineffective for failing to request polygraph tests for him and a witness; and that his counsel was ineffective for failing to assist him in withdrawing his plea.

For the reasons set forth below, the motion to vacate or for an evidentiary hearing will be denied and the petition will be dismissed.

## I. Background

On December 1, 2005, the government filed a superseding indictment charging Inthoulangsy with conspiracy to possess MDMA (ecstasy) and methamphetamine with intent to distribute and to distribute the same (Count 3); conspiracy to unlawfully import ecstasy and

methamphetamine (Count 4); possession of methamphetamine with intent to distribute (Count 20); and possession of MDA and ecstasy with intent to distribute (Count 21).

On May 25, 2006, Inthoulangsy pleaded guilty to Counts 3 and 21 pursuant to a plea agreement. The plea agreement was not signed. (May 25, 2006 Tr. at 10). Inthoulangsy stipulated to the amount of ecstasy for which he was responsible and the government agreed to move for a three-level reduction under the sentencing guidelines for acceptance of responsibility. (*Id.*). The parties disputed whether for sentencing purposes he should be held responsible for the methamphetamine, but agreed to resolve that issue at sentencing. (*Id.* at 10-11). The government stated that it would dismiss the remaining charges if the Court found him responsible for the methamphetamine. (*Id.* at 5). The government also agreed to seek the transfer of a case against him pending in the Middle District of Florida, and recommend a term of incarceration in that case to run concurrent with the sentence imposed in this case. (*Id.* at 10).

During the plea colloquy on May 25, 2006, counsel for the government noticed a mistake in the plea agreement. (*Id.* at 12). The language in the agreement incorrectly listed potential maximum penalties for the conspiracy charge if petitioner was found responsible for the methamphetamine. (*Id.* at 12-13).[1] Counsel for the government then stated in open court the maximum penalty if the methamphetamine was not included and the potential maximum penalty that petitioner faced when the methamphetamine was included. (*Id.*).

Inthoulangsy stated that he understood the newly stated potential maximum penalties. The Court then inquired as follows:

---

[1] Without the methamphetamine, the maximum sentence was 20 years' imprisonment, a fine of $1,000,000, and a minimum of three years of supervised release on both counts. With the methamphetamine, the sentence for the conspiracy charge rose to a mandatory minimum of 10 years' imprisonment, with a maximum of life, a fine of $4,000,000, and a minimum of five years of supervised release.

> Q. Just to be clear, you understand how your letter is wrong with regard to your maximum penalty?
> A. Yes, sir.
> Q. Do you have any questions for me or your lawyer about this letter?
> A. No questions, your Honor.
> Q. Do you feel you understand what the two mistakes are that we discussed on the letter?
> A. Yes, sir.

(*Id.* at 12-13).[2] Counsel for Inthoulangsy then requested time to discuss the matter with his client. After a conference between counsel and Inthoulangsy, the Court again asked Inthoulangsy if he had any questions, and he responded that he did not. (*Id.* at 14).

At a later point, counsel for the Inthoulangsy subsequently expressed concern because he had only gone over the actual contents of the letter with his client prior to the colloquy and believed his client may have relied on those contents in choosing to enter a plea of guilty. The Court agreed to give Inthoulangsy and his counsel additional time to discuss the terms of the plea agreement. (*Id.* at 28-29). The Court said it would accept the plea, but informed Inthoulangsy that he would have until June 14, 2006, to withdraw his plea if he chose to do so after discussing it with counsel. (*Id.* at 34-35).

On June 15, 2006, counsel for Inthoulangsy filed a notice stating that he would not seek to withdraw his plea based on the government's representation that his potential maximum sentence could not exceed 20 years and the government would not seek a sentence in excess of 20 years. (Docket No. 113). Counsel also filed an affidavit stating that he had met with Inthoulangsy on June 13 to discuss the government's representation and that he agreed not to withdraw his plea. (*Id.*).

---

[2] The letter in question also incorrectly stated that he did not have a plea agreement, when the terms of the letter were the plea agreement. He does not present this issue this as a basis for his lack of understanding of the plea agreement.

3

On November 28, 2006, the Court held an evidentiary hearing as part of sentencing on two disputed factual issues: Inthoulangsy's leadership role and his responsibility for the methamphetamine. Special Agent Paul Karamourtopoulus and Sanaxy Khounthy, a cooperating witness, testified as to both issues. Special Agent Karamourtopoulus also testified that Inthoulangsy spoke with undercover agents in English and the agents had no problems understanding him. (Nov. 28, 2006 Tr. at 16). Defense counsel cross-examined both witnesses on Inthoulangsy's leadership role and knowledge of the methamphetamine. On December 11, 2006, the Court found that Inthoulangsy held a leadership role in the conspiracy and that the distribution of methamphetamine was reasonably foreseeable to him, and that therefore he would be held responsible for the methamphetamine for sentencing purposes. (Dec. 11, 2006 Tr. at 29-33). The Court deferred the actual imposition of the sentence until the Florida case was ready for sentencing.

On July 17, 2007, the Court held an arraignment and change of plea hearing for Inthoulangsy on the case that had been transferred from the Middle District of Florida. The Court then sentenced him for both the Massachusetts and Florida cases, and imposed a sentence of 210 months' incarceration. (July 19, 2007 Tr. at 40).

Inthoulangsy filed an appeal that disputed his sentence enhancements as to leadership role and responsibility for the methamphetamine. He also filed a *pro se* brief contending that he received ineffective assistance of counsel. On August 24, 2009, the Court of Appeals found that there was no error and no substantial question presented and summarily affirmed the sentence. The Court of Appeals also declined to address the issue of ineffective assistance of counsel, finding that the argument was premature and there was insufficient evidence in the record to

address the issue.

On August 27, 2010, Inthoulangsy filed the present motion to vacate his plea or seeking in the alternative an evidentiary hearing.

## II. Analysis

### A. Procedural Bar

Petitioner contends that his guilty plea was not voluntary and that he did not have a full understanding of the consequences of the plea because he does not understand English. He further contends that his counsel misrepresented facts and misled him as to the sentence he would face if he pleaded guilty.

The issue of whether a guilty plea was knowing and voluntary may not be collaterally challenged unless the petitioner first raised the issue on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *see also United States v. Felix-Felix*, 2009 WL 981378, at *3 (N.D. Ill. April 10, 2009) (noting that a petitioner would be procedurally barred from bringing a "direct claim that his plea was not knowing and voluntary and that he did not receive proper translation assistance" in a § 2255 action because it was not raised on appeal with the Court of Appeals).

To the extent that petitioner contends that his plea was not voluntary and knowing, those claims are procedurally barred because his direct appeal raised only sentencing issues. Petitioner contends that this "reinforces his claim of the ineffectiveness of his trial and appellate counsels." (Pet. Reply Br. at 2). Petitioner has not previously raised any argument alleging ineffective assistance of appellate counsel, so that argument is not properly before the Court. Furthermore, petitioner makes only the bare statement and alleges no facts to support that statement. To the extent that petitioner's argument that his plea was not voluntary can be construed as an

5

ineffective assistance of counsel claim, it is discussed below.

   **B.**  <u>**Ineffective Assistance of Counsel**</u>

  In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that the deficiencies were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 688-92 (1984). Judicial review of counsel's performance is highly deferential, and there is a presumption that counsel's conduct falls within a wide range of reasonable professional assistance and could be considered sound trial strategy. *Id.* at 689.

  A petitioner bringing a § 2255 motion is not entitled to an evidentiary hearing and bears the burden of establishing the need for such a hearing. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). An evidentiary hearing for the purposes of § 2255 is not required "where the district judge is thoroughly familiar with the case as, for example, when he presides at both a change of plea hearing and sentencing." *Ouelette v. United States*, 862 F.2d 371, 377 (1st Cir. 1988).

   **1.**  <u>**Voluntariness and Understanding of Petitioner's Guilty Plea**</u>

  Petitioner contends that his plea was not made voluntarily and with a full understanding of the consequences because of language problems and misrepresentations by his attorney. If there is a problem with the translation, or the defendant does not understand what is being said to him, he should raise the issue with the court at the time. *See United States v. Joshi*, 896 F.2d 1303, 1310-11 (11th Cir. 1990) (citing *United States v. Lim*, 794 F.2d 469, 471 (9th Cir. 1986)) (rejecting claim that the nature of the translation inhibited defendant's Sixth Amendment right to effective counsel because there was no indication of any problem). A defendant's statements at

6

a Rule 11 proceeding are conclusively established as accurate and true unless the defendant can offer a valid reason otherwise. *See United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) (citing *Crawford v. United States*, 519 F.2d 347, 350 (4th Cir. 1975)). Furthermore, a § 2255 petition arguing that a plea was induced by attorney misrepresentations should result in an evidentiary hearing only when "the allegations [are] highly specific and usually accompanied by some independent corroboration." *Id.* at 80 n.5.

Petitioner never previously raised any issue with the translation or his ability to understand English, despite appearing before the Court three times after his initial guilty plea. Furthermore, Special Agent Karamourtopoulus testified that petitioner conversed in English without any problems. On at least two separate occasions, petitioner directly answered questions posed to him by the Court in English, without the aid of the interpreter, before the Court directed that all questions and answers be translated to ensure that there was no doubt about his comprehension. (May 25, 2006 Tr. at 7; July 19, 2007 Tr. at 5). These exchanges show that petitioner had at least some English ability, and if he had translation problems, could have raised them himself. Petitioner's exhibits, mainly letters between himself and counsel, do indicate some concern over language barriers and unhappiness with the interpreter. However, this is insufficient to show that his plea was not knowing and voluntary, and why his statements under oath should be disregarded.

At the Rule 11 hearing, petitioner stated that he understood the terms of his plea agreement, as corrected; that he understood the maximum sentence that he could receive; that he had not received any other promises; and that he was pleading guilty of his own free will because he was guilty. *See Pacheco v. United States*, 2006 WL 760287, at *6-7 (S.D.N.Y.

7

March 23, 2006) (rejecting petitioner's claim that he did not knowingly waive his rights to appeal because the translator did not fully explain the plea agreement because petitioner stated that he fully understood the agreement during the plea allocution). He did not indicate that he did not understand what was being told to him, or what was going on.

Petitioner contends that counsel misled him into "believing that if he [pleaded] guilty to the charges, they could contest the methamphetamine charge at sentencing." (Pet. Br. at 7). In fact, defense counsel did contest petitioner's responsibility for the methamphetamine at sentencing. To the extent that petitioner may be alleging that counsel incorrectly stated the potential sentence he would be receiving, he has not made sufficiently specific allegations or provided any independent corroboration for such claims. Petitioner's exhibits merely show that he was unhappy that the Court did not adopt defense counsel's sentencing recommendation. Petitioner has not shown any reason why his guilty plea was not voluntary, nor has he met his burden of establishing the need for an evidentiary hearing.

### 2. **Failure to Provide Requested Polygraph Tests**

Petitioner contends that he received ineffective assistance of counsel because counsel did not fulfill a request that petitioner and Sanaxay Khounthy, a government witness, receive polygraph tests. Petitioner argues that the polygraph tests would have shown that he was not responsible for the methamphetamine and that he was not a leader in the conspiracy, and without those enhancements, he would have received a significantly shorter sentence. The decision to push for the admission of polygraph evidence falls with counsel's discretion in determining trial strategy. *See Hatch v. Lampert*, 215 Fed. Appx. 614, 615 (9th Cir. 2006) (rejecting a claim of ineffective assistance of counsel for failure to move for a mistrial because counsel adopted a

8

reasonable alternative strategy by seeking the admission of polygraph evidence). In order to show that counsel's conduct was prejudicial, a petitioner "must show that but for his counsel's deficiency, there is a reasonable probability he would have received a different sentence." *Porter v. McCollum*, 130 S. Ct. 447, 453 (2009); *Peralta v. United States*, 597 F.3d 74, 79-80 (1st Cir. 2010).

Counsel's decision not to request a polygraph examination for petitioner and Khounthy falls within the standard of objectively reasonable conduct and therefore does not constitute ineffective assistance of counsel. Courts consider polygraph tests to be of dubious scientific value, and they are frequently found irrelevant and inadmissible. *See United States v. Rodriguez-Berrios*, 573 F.3d 55, 73 (1st Cir. 2009). Even assuming that counsel's failure to obtain polygraphs was objectively unreasonable conduct, petitioner still would not be able to demonstrate that the conduct was prejudicial to him. Petitioner asserts that the results would show that he was telling the truth and Khounthy was lying, but offers no real support for that contention. Without more, petitioner's bare assertion is insufficient to show prejudice.

Furthermore, even if the polygraph results did come back in petitioner's favor, they may well be inadmissible. Petitioner contends that results would be admissible if the government were willing to stipulate to admissibility. (Pet. Reply Br. at 5). However, there is nothing to suggest that the government would be willing to make such a stipulation, and even assuming such a stipulation, the limited value of polygraph testing might not alter any of the Court's factual findings that led to the original sentence. Therefore, petitioner has not met the burden of showing that his counsel's conduct was prejudicial and constituted ineffective assistance of counsel.

### 3. Failure to Assist in Withdrawing Petitioner's Guilty Plea

Petitioner contends that he sought to withdraw his guilty plea, but his counsel failed to meet with him within the period of time allotted by the Court to do so. A petitioner seeking to withdraw a guilty plea due to ineffective assistance of counsel must meet the two-part *Strickland* test. *See United States v. Pellerito*, 878 F.2d 1535, 1537-38 (1st Cir. 1989). In order to show prejudice, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Material issues of fact may not be resolved against the petitioner solely based on "*ex parte*, sworn or unsworn, statements of the government, or defense counsel." *Butt*, 731 F.2d at 77-78 (internal citations omitted). A petitioner may not seek to withdraw a guilty plea merely because he received a harsher sentence than he anticipated. *United States v. Mercedes Mercedes*, 428 F.3d 355, 359 (1st Cir. 2005).

Petitioner contends that "upon realizing that the Court would hold him accountable for the methamphetamine and his potential sentence would be much greater than what his attorney, Mr. Budreau, led him to believe he would receive, [he] told Mr. Budreau that he wished to withdraw his plea." (Pet. Br. at 10). Petitioner further argues that counsel failed to meet with him within the allotted time by the Court for withdrawing the plea. (*Id.*). This is directly contradicted by Budreau's June 15, 2006 affidavit. While Budreau's affidavit alone is not sufficient to reject petitioner's claim, petitioner has not met his burden of showing the need for an evidentiary hearing. Petitioner's claim lacks specificity and does not state when Budreau did in fact meet with him. None of petitioner's exhibits indicate that petitioner actually sought to withdraw his plea at any point. Despite appearing before the Court on three subsequent

occasions, petitioner never indicated that he wanted to withdraw his plea. In short, petitioner has not demonstrated that he received ineffective assistance of counsel or that he is entitled to an evidentiary hearing.

## III.     Conclusion

For the foregoing reasons, petitioner's motion to vacate his sentence or for an evidentiary hearing is DENIED, and the petition is DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 18, 2012